IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| MOBILE DATA TECHNOLOGIES LLC, | § | Civil Action No. 7:22-cv-00244-DC |
| Plaintiff, | § | |
| v. | § | JURY TRIAL DEMANDED |
| META PLATFORMS, INC., | § | **REDACTED VERSION** |
| Defendants. | § | |

**DEFENDANT'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

A. META IS HEADQUARTERED IN NDCA. ........ 1

B. PLAINTIFF MDT AND RELATED PARTIES ARE NOT IN MIDLAND-ODESSA, AND HAVE LIMITED TO NO CONNECTIONS TO TEXAS. ........ 2

C. META EMPLOYEES WHO WORK ON THE DESIGN, DEVELOPMENT, MARKETING, AND FINANCES FOR THE ACCUSED FEATURES ARE PRIMARILY LOCATED IN NDCA AND WASHINGTON. ........ 3

D. META'S SOURCES OF PROOF WERE PRIMARILY GENERATED IN NDCA AND WASHINGTON AND WILL BE COLLECTED IN NDCA. ........ 5

E. THERE ARE RELEVANT PRIOR ART-RELATED THIRD-PARTY WITNESSES IN CALIFORNIA. ........ 6

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 7

A. THIS ACTION COULD HAVE BEEN BROUGHT IN NDCA. ........ 7

B. THE PRIVATE FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER TO NDCA. ........ 7

1. THE SOURCES OF PROOF WEIGH IN FAVOR OF TRANSFER TO NDCA. ........ 7

2. THE COSTS FOR WILLING WITNESSES WOULD BE LOWER IN NDCA. ........ 9

3. PRIOR ART WITNESSES IN NDCA WEIGH IN FAVOR OF TRANSFER. ........ 12

4. NO PRACTICAL ISSUES WEIGH AGAINST TRANSFER TO NDCA. ........ 13

C. THE PUBLIC FACTORS FAVOR TRANSFER OR ARE NEUTRAL. ........ 14

1. TO THE EXTENT ACCORDED WEIGHT, COURT CONGESTION FAVORS TRANSFER. ........ 14

2. NDCA HAS A STRONG LOCAL INTEREST IN THIS MATTER, FAVORING TRANSFER. ........ 14

3. THE FINAL PUBLIC FACTORS ARE NEUTRAL. ........ 15

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc.*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ....................11

*In re Apple Inc.*,
No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022) . ....................8

*Corel Corp. v. Dell Inc.*,
No. MO-13-CV-040, 2013 WL 12091649 (W.D. Tex. July 25, 2013) ..........14, 15

*Gentex Corp. v. Meta Platforms Inc.*,
No. 6:21-cv-00755-ADA, 2022 WL 2654986 (W.D. Tex. July 8, 2022)..........11

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ....................7, 14, 15

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27,2021) ....................11, 13

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ....................15

*In re Planned Parenthood Fed'n Of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022) ....................7

**Statutes**

28 U.S.C. § 1400....................7, 16

**Other Authorities**

Fed. R. Civ. P. 45(c) ....................10

## I. INTRODUCTION[1]

This case belongs in the Northern District of California ("NDCA"), not the Midland-Odessa Division of the Western District of Texas ("WDTX"). Defendant Meta Platforms, Inc. ("Meta") has no offices in the Midland-Odessa Division, and has identified no potentially relevant employees in the Division. Meta's closest offices in Austin, Texas, are more than 300 miles away from the courthouse in Midland, and the employees Meta has identified with knowledge regarding the design and development of the accused features, potentially relevant financial information, and marketing information, are primarily in NDCA and the West Coast, not Texas. Plaintiff Mobile Data Technologies, LLC ("MDT") has no apparent connection to ***Texas*** apart from a virtual office address, and the likely MDT-affiliated witnesses are located in New York, where patents in the same family had been used in prior unsuccessful lawsuits, or Florida – not Texas. Given the lack of any connection of this case to Midland-Odessa, and the strong connections to Northern California, the case should be transferred to NDCA.

## II. BACKGROUND

### A. Meta is Headquartered in NDCA.

Since 2004, Meta (formerly known as Facebook, Inc.) has been based in NDCA, with its headquarters and principal place of business currently located in Menlo Park, California. (Wong Decl. ¶ 2.) Meta has numerous other offices in NDCA, including in Burlingame, San Francisco, Foster City, Newark, Sunnyvale, Mountain View, Fremont, and Sausalito. (*Id.* ¶ 3.) As of April 12, 2023, [redacted] of Meta's U.S.-based employees work either in one of Meta's NDCA-based offices

[1] While there is no express deadline in this Court's Standing Order Governing Patent Proceedings for filing a motion to transfer, Meta has timed this motion to provide approximately 20 weeks between filing and the *Markman* hearing. (*Compare* Albright, J. OGP 4.3, https://www.txwd.uscourts.gov/wp-content/uploads/2023/01/Standing-Order-Governing-Patent-Cases.pdf, with similar timing.)

or are full-time remote employees based in NDCA. (*Id.*) In contrast, as of the same date, only [redacted] of Meta's U.S.-based employees work in the state of Texas. (*Id.* ¶ 4.) Meta also has no offices in any of the counties that make up the Midland-Odessa Division of WDTX. (*Id.*) Meta's closest offices to the Midland courthouse are in Austin, Texas – more than 300 miles away, or a more than 5-hour drive. (*See id.*; Stameshkin Decl. ("SD") Ex. 1.)

### B. Plaintiff MDT and Related Parties are not in Midland-Odessa, and Have Limited to No Connections to Texas.

Plaintiff MDT asserts six related patents in this case: U.S. Patent Nos. 8,793,336, 8,825,801, 9,032,039, 9,619,578, 9,922,348, and 10,839,427. (ECF No. 1.) These patents each list David Walker Harper, Jason James Sabella, and William Henry Munch as inventors. Mr. Harper currently resides in Bay Shore, New York, Mr. Sabella in Corum, New York, and Mr. Munch in Tampa, Florida. (SD Exs. 2-4.) The attorney who prosecuted the applications that gave rise to the patents-in-suit is Joseph Ryan, based in Melville, New York. (SD Exs. 5-11.)

The patents-in-suit are continuations of applications originally filed by Wireless Ink Corporation, a New York based company focused on mobile website development. (SD Ex. 12 at 2.) Wireless Ink originally filed multiple suits in its home state of New York using patents in the same family against Meta (formerly known as "Facebook"), Google and Twitter. (SD Exs. 12-14.) All of those cases were unsuccessful, resulting either in summary judgment of no infringement or of invalidity at the patent office of the asserted patents. (SD Exs. 15-17.) In January of 2017, Wireless Ink assigned the entire patent family via foreclosure to Engagelogic Corporation, another New York based company affiliated with at least Mr. Harper. (SD Ex. 18.) In April of 2022, Engagelogic assigned the patents-in-suit to Plaintiff MDT. (SD Ex. 19.)

MDT is a Delaware LLC that formed in 2019, with no record of registering to do business in the state of Texas. (SD Ex. 21.) At the time of the 2022 assignment of the patents-in-suit, MDT

claimed an address of Allen, Texas, in Collin County in the Eastern District of Texas. (SD Ex. 19.) It appears that this address – 825 Watter's Creek Blvd., Building M, Suite 250 – is a virtual office. (SD Ex. 22.) Also in 2022, MDT assigned a security interest in the patents-in-suit to a company named "LIT-US CHISUM 22-B LLC," listing an attorney's address in New York City. (SD Ex. 20.) This security interest assignment was signed on MDT's behalf by Mr. Harper, as "Member." (*Id.*)

As of at least the filing of the Complaint, MDT lists its address as 1 Chisholm Trail Rd, Suite 450, Round Rock, TX 78681. (ECF No. 1 ¶ 1.) This address also appears to be a virtual office offered by the same company leasing MDT's previous address, Davinci Virtual Office Solutions. (SD Exs. 22, 23.) While MDT alleges in its Complaint that it "specializes in mobile technologies and social media solutions," to date, Meta has been unable to locate any information regarding MDT apart from its efforts to assert these new patents from the same failed family in this venue unrelated to either party. (ECF No. 1 ¶ 1.) Indeed Meta is unaware of any physical presence by MDT in the state of Texas, or of any witness affiliated with MDT located in Texas.

### C. Meta Employees Who Work on the Design, Development, Marketing, and Finances for the Accused Features are Primarily Located in NDCA and Washington.

Meta's employees responsible for the design and development of the accused features are primarily located in NDCA and Washington, with additional groups of employees located in New York and London. In MDT's infringement contentions, it asserts the accused product is "Defendants' social media and advertising applications and software known as Facebook which includes, but is not limited to the Facebook mobile app and in-app browser." (*See* SD Exs. 24-29, each at 2.) Specific features and functionality set forth in these contentions include: (1) Posting content, including photos, Stories, videos, Life Events, and Live video, including the Composer and its associated tools (such as, including location information or background colors in a post);

(2) controlling access to posted content, including via privacy settings; (3) accessing, viewing, commenting on, sharing, or reacting to posted content on a user's News Feed; (4) storage of information relating to posted content; (5) "friending" a user, and lists of friends; (6) showing advertisements to users, including, for example, based on user location information; and (7) Shops, including Product Detail Pages (collectively "Accused Functionalities"). (*See* SD Exs. 24-29.)

A user's ability to post and interact with other users' posts in News Feed appears to be the primary focus of MDT's allegations, as these features are discussed with respect to each of MDT's independent claim mappings. (*Id.*) The remaining accused features are primarily associated with MDT's mapping of dependent claims or solely with the '427 patent. (*Id.*)

Meta employees with relevant knowledge regarding the design and development these Accused Functionalities based in NDCA include: [redacted]

[redacted]

Additional Meta employees with relevant knowledge are based in the Seattle area in Washington state, including: [redacted]

In addition, each of the above-listed individuals' teams are also primarily based in NDCA and Washington, with additional team members in New York and London. [redacted]

### D. Meta's Sources of Proof Were Primarily Generated in NDCA and Washington [redacted]

Documents relating to the design and development of the Accused Functionalities, as well

as relevant marketing and financial documents, are primarily created and maintained by employees based in NDCA and Washington. (Wong Decl. ¶¶ 19, 20.) In addition, [redacted] (*Id.* ¶ 23.) Meta is unaware of any sources of proof located in the Midland-Odessa Division of WDTX. (*Id.* ¶ 19.)

**E. There are Relevant Prior Art-Related Third-Party Witnesses in California.**

Numerous prior art witnesses are located in California, including NDCA. For example, books about Yahoo!, including specifically about its Yahoo! Clubs and Yahoo! Briefcase products, were previously used by the Patent Office to invalidate claims in a related patent in an *inter partes* reexamination. (SD Ex. 30.) Adam Rosen, previously a Software Engineer at Yahoo!, is based in Mountain View and worked on an early version of Yahoo! Clubs. (SD Exs. 31, 32.) Lalgudi Kannan, previously a Senior Engineering Manager at Yahoo!, is based in San Jose and worked on Yahoo! Briefcase, Yahoo! Clubs, and Yahoo! Photos – all relevant prior art systems. (*Id.* Exs. 33, 34.) Beyond Yahoo!, Daniel Jameson was the lead inventor on U.S. Patent Application Publication No. 2002/0156787 (a prior art patent publication) and former Lead Developer at Event411.com (a prior art system), and is based in Santa Clarita, in Southern California. (*Id.* Exs. 35-37) Event411 was based in Marina Del Rey, California, such that additional former employees with knowledge of this system may also reside in the Los Angeles area. (*Id.* Ex. 38.)

## III. LEGAL STANDARD

"[A] district court may transfer any civil action to any other district court where the action

might have been brought for the convenience of parties and witnesses and in the interest of justice." *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023) (citing 28 U.S.C. §1404(a)). While in the Fifth Circuit, "the decision of whether to transfer a case is committed to the district court's discretion," if "a movant demonstrates that the transferee venue is clearly more convenient the district court should grant transfer." *Id.* (citing *In re Planned Parenthood Fed'n Of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) and *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)) (internal quotations omitted). The Fifth Circuit also has identified "private" and "public" factors to determine whether transfer is appropriate, where the private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive"; and the public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Planned Parenthood*, 52 F.4th at 630 (internal citations and quotations omitted).

## IV. ARGUMENT

### A. This Action Could Have Been Brought in NDCA.

Meta's headquarters and principal place of business are located in NDCA, such that this action could have been brought in NDCA. 28 U.S.C. § 1400(b). (Wong Decl. ¶ 2.)

### B. The Private Factors Weigh Heavily in Favor of Transfer to NDCA.

#### 1. The Sources of Proof Weigh in Favor of Transfer to NDCA.

Here, Meta's documents are more conveniently located to NDCA. Meanwhile, neither party is likely to have any sources of proof in the Midland-Odessa Division.

With respect to Meta, the sources of proof most likely to be relevant to this matter – documents regarding the design and development of the Accused Functionalities, as well as relevant marketing and financial documents – were primarily developed by employees located in NDCA and Washington state. *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *1 (Fed. Cir. May 26, 2022) ("documents relating to the research, design, development and operation of the accused products" being "generated in Northern California" weighs toward transfer). (Wong Decl. ¶¶ 19, 20.) [redacted]

[redacted] (*Id.*) *In re Apple*, 2022 WL 1676400, at *1 ("source code" that "was developed, and is accessible for inspection, from Northern California and controlled on a need-to-know basis" favored transfer).

With respect to MDT, as noted above, MDT and its likely affiliated witnesses are located in New York (Mr. Harper, Mr. Sabella, and Mr. Ryan) (who previously sat for depositions in New York) and Florida (Mr. Munch). (SD Exs. 2-5.) Documents regarding conception and reduction to practice, the prosecution of the patents-in-suit, and any products that purportedly practice the claims of the patents-in-suit would likely be in the possession of these individuals or one of the predecessor entities that owned the relevant patent family, both based in New York. (*Id.* Ex. 12 at 2; Ex. 18.) While MDT purports to have an address in Round Rock, Texas, this appears to be a

virtual office and would therefore be unlikely to be a repository of any documents or other sources of proof. (*Id.* Ex. 23.) Thus, MDT likely has no relevant sources of proof in either the transferee or transferor venue.

**2. The Costs for Willing Witnesses Would be Lower in NDCA.**

Here, the cost of attendance for willing witnesses, including party and willing party-affiliated witnesses, would be significantly lower in NDCA than in WDTX. As discussed above, relevant Meta employees are primarily in NDCA and Washington state. (Wong Decl. ¶¶ 7-17, Exs. A-K; SD ¶¶ 67-70.) In particular, the core Accused Functionality – which make up the vast majority of allegations relating to the asserted independent claims – comprises sharing and interacting with content in News Feed. (SD Exs. 24-29.) [redacted] None are in Texas.

These individuals' relevant teams further demonstrate the West Coast focus of this case. As shown in the Exhibits to the Wong Declaration, [redacted]

[redacted] none are located in or near the Midland-Odessa Division. (Wong Decl. ¶¶ 7-9, 11, 12, 16; SD ¶ 68.)

In what appears to be an attempt to support its selection of venue, MDT listed a number of individuals it alleged to be current employees of Meta located in WDTX in its Complaint.[2] (ECF No. 1 ¶¶ 26-40, 42-47.) However, none of these individuals live in the Midland-Odessa Division – and two do not even reside in Texas. (Wong Decl. ¶¶ 25, 26, 28-43, 45 (Texas-based individuals in either Austin or San Antonio); *id.* ¶¶ 27, 44 (individuals in Boise, Idaho and Seattle).) Moreover, these individuals appear unlikely to be relevant witnesses in this matter, or to have relevant knowledge when compared with those witnesses identified by Meta above. As just a few examples, [redacted] (*Id.* ¶¶ 25, 28-30, 33, 36, 38, 42, 45.) None were identified in Meta's investigation into teams relating to the design and development of the Accused Functionalities, nor on relevant marketing or finance teams. (*Id.* Exs. A-K.)

As discussed above, MDT's known likely witnesses reside in New York (Mr. Harper, Mr. Sabella, and Mr. Ryan) and Florida (Mr. Munch). (SD Exs. 2-5.) Regardless of whether these witnesses are deemed willing witnesses or third parties, the analysis is the same, as they do not reside in either the transferee or transferor venue (or state), and are therefore not subject to the subpoena power of either NDCA or WDTX. Fed. R. Civ. P. 45(c).

[2] MDT also discusses at length Meta's Austin offices and Meta's future Temple, Texas data center in its Complaint. (*See, e.g.*, ECF No. 1 ¶¶ 12, 20-22.) But neither of these facilities are located in or near the Midland-Odessa Division, where MDT filed this case.

For those witnesses based in NDCA, it would unquestionably be more convenient to attend trial in NDCA than WDTX. For those witnesses in Seattle, it has been recognized that witnesses based in Washington state would find testifying in NDCA more convenient than *Waco*, Texas – so adding an additional flight or drive to *Midland* would make NDCA even more comparably convenient. *See Gentex Corp. v. Meta Platforms Inc.*, No. 6:21-cv-00755-ADA, 2022 WL 2654986, at *7 (W.D. Tex. July 8, 2022). This is particularly the case as there are no direct flights from Seattle to Midland-Odessa, while there are many between Seattle and the Bay Area. (SD Exs. 39-43.)

For those non-West Coast witnesses based outside of Texas, such as witnesses in New York and Florida, these witnesses would need to travel a significant distance and would therefore be at best neutral to the transfer analysis. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27,2021) (witnesses in the northeastern United States would have similar burden to travel to NDCA as to Waco, Texas); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (same, as to Florida-based witness). However, here NDCA would likely be *more* convenient for these witnesses, due to the Bay Area's three airports and access to direct flights, as compared with Midland's lack of direct flights. (SD Exs. 44-49.) *In re Google*, 2021 WL 4427899 at *4 (availability of direct flights and major airports relevant to this factor).

Finally, while Meta does not currently expect to call any Texas-based witnesses at trial, even *were* an Austin-based individual relevant, they would face a more than five-hour drive, or need to catch the single daily flight to Midland from Austin.[3] (SD Exs. 1, 50.) This renders any alleged convenience to attend trial in Midland-Odessa slight at best, as compared to NDCA (where

[3] [redacted] (Wong Decl. ¶¶ 7-9, 11, 12, 16, 25, 26, 28-43, 45; SD Exs. 51-53.)

such employees could, for example, meet with other team members in Meta's numerous NDCA offices during their trip, lessening their inconvenience).

In view of the above, this factor heavily favors transfer.

### 3. Prior Art Witnesses in NDCA Weigh in Favor of Transfer.

As noted above, several prior art witnesses reside in NDCA or elsewhere in California. For example, Adam Rosen, who worked on an early version of Yahoo! Clubs (which has already been used to invalidate a related patent) and Lalgudi Kannan, who worked on Yahoo! Briefcase, Yahoo! Clubs, and Yahoo! Photos, both reside in the Bay Area. (SD Exs. 31-34.) While certain publications describing a subset of features of these products were cited on the face of the patents-in-suit, there is no evidence they were actually considered in the later patent examinations and the PTO did not have access to the products nor to testimony relating to those products that could be provided by these individuals or other former Yahoo! employees in the Bay Area (where Yahoo! was based during the relevant time frame). (*Id.*, Ex. 54.) In addition, Daniel Jameson is based in Southern California and he, along with other former Event411.com employees, may have information regarding the Event411.com related prior art. (SD Exs. 35-38.)

In what appears to be an attempt to claim relevant third parties are in WDTX, MDT also listed several former employees of Meta in its Complaint that it alleges reside in WDTX. These include Namaz Gurbanov,[4] Michael Evans, Mark Roberts, Garnett Thompson, and Jose R. Diaz Palacios. (ECF No. 1 ¶¶ 41, 53-56.) The relevance of any testimony from these individuals is, at best, "highly speculative" because apart from listing these employees' titles (such as "Senior Software Engineer") and, in the case of Mr. Gurbanov, a vague quote from LinkedIn about "[c]reating [a] roadmap for the team that aligns with the strategic vision of the organization," MDT

[4] Mr. Gurbanov was listed as a current employee, but is no longer at Meta. (ECF No. 1 ¶ 41; SD Ex. 65.)

makes no effort to explain what knowledge these individuals have that would be relevant to any claim or defense in this action. (*Id.*) *See In re Google*, 2021 WL 4427899 at *7 (finding that pointing to former employees' LinkedIn profiles, where plaintiff is "not at all specific about what testimony it expected to elicit" from the former employee renders the likelihood that such employee would provide relevant testimony "highly speculative").)

Further, as each of these individuals reside in the Austin, Texas area, they would still need to travel a significant distance to attend trial, were they deemed relevant. (SD Ex. 1.) Moreover, Meta does not anticipate at this time that either side would need to rely on former employees of Meta as witnesses. The code speaks for itself, and the company can speak through current employees. Moreover, a simple LinkedIn search demonstrates the vast number of former employees of Meta based in the Bay Area, wildly outnumbering any former employees in Texas. (SD Ex. 55 (7,000+ results for search of individuals listing Meta as former employer and location of "San Francisco Bay Area").) Thus, the mere existence of former employees in a forum such as WDTX does not demonstrate that forum's convenience as compared with NDCA.

**4. No Practical Issues Weigh Against Transfer to NDCA.**

There are no co-pending suits and the specific patents-in-suit have not previously been litigated. While earlier issued family members of the patents-in-suit were litigated between Wireless Ink Corporation and Meta, these cases were filed more than ten years ago in the Southern District of New York.[5] (SD Exs. 12-17.) As there are no practical issues that would weigh in favor of keeping this case in Midland-Odessa, this factor is neutral.

[5] Five suits involving one earlier issued family member were filed in the Eastern District of Texas in 2017 against a variety of financial institutions, which were all dismissed with prejudice with no substantive activity. (SD Exs. 56-60.)

### C. The Public Factors Favor Transfer or Are Neutral.

#### 1. To the Extent Accorded Weight, Court Congestion Favors Transfer.

The Federal Circuit has recently found it an abuse of discretion to accord the "administrative difficulties flowing from court congestion" factor weight where the parties are "not engaged in product competition in the marketplace and [Plaintiff] is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *In re Google LLC*, 58 F.4th at 1383. Here, MDT has no discernible commercial presence, nor does it appear to have any business apart from asserting the patents-in-suit. As such, this factor should be accorded little to no weight.

Should the Court accord this factor weight, however, it favors transfer. The most recently available data by Division for WDTX shows that in 2021, approximately 1,644 cases were filed in the Midland-Odessa and Pecos Divisions, the vast majority of which are criminal cases which must take priority over civil cases. (SD Ex. 61 at 1-3; Ex. 62 at 2-3.) This is more than double the number of cases filed in 2021 per active judgeship in NDCA for 2021 (785). (SD Ex. 63 at 9.) This Court has previously found that the overall caseload of Midland-Odessa and Pecos can weigh heavily in *favor* of transfer if compared to a forum with a lower per-judge caseload. *Corel Corp. v. Dell Inc.*, No. MO-13-CV-040, 2013 WL 12091649, at *4 (W.D. Tex. July 25, 2013).

Finally, in 2022, the WDTX as a whole averaged 1,014 cases per active judgeship for the 12-month period ending December 31, 2022, as compared with 721 cases per active judgeship in NDCA. (SD Ex. 64 at 5, 9.) Time to trial in WDTX civil cases averaged 29.5 months, and 32.9 months in NDCA. (*Id.*) The higher per-judge case burden in WDTX and slight difference in time to trial demonstrates that this factor, if considered, is either neutral or weighs in favor of transfer.

#### 2. NDCA Has a Strong Local Interest in this Matter, Favoring Transfer.

Meta's headquarters and principal place of business are in NDCA, and have been for nearly

two decades, along with [redacted] of its U.S.-based workforce. (Wong Decl. ¶¶ 2, 3.) As noted above, a significant portion of the design and development of the Accused Functionality took place in NDCA. (*Id.*, ¶¶ 7-15, Exs. A-I.) NDCA unquestionably has a strong interest in this matter.

Meanwhile, the inventors of the patents-in-suit reside in New York and Florida, and the patents-in-suit were initially assigned to a New York-based company. (SD Exs. 2-5, 12-14.) MDT is not a Texas corporation, nor has it registered to do business in Texas. (*Id.* Ex. 21.) MDT has at best an ephemeral, virtual presence in ***Round Rock***, Texas, in the Austin Division – not the Midland-Odessa Division. (*Id.* Ex. 23.) There is no indication that MDT has any employees, or conducts any business, in Texas, let alone WDTX. Thus, MDT "has no meaningful presence in the Western District of Texas that should be given significant, let alone comparable weight to the facts tying the litigation to the California forum." *In re Google*, 58 F.4th at 1384-85; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320-21 (Fed. Cir. 2021) ("[L]ittle or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation.").

Finally, this case has ***no*** connection to the Midland-Odessa Division. This Court has found that "it would be an undue burden on the people of the Midland-Odessa Division to assign them jury duty when they have no interest in this case being resolved; whereas the [transferee forum] clearly has a particular interest in this case's resolution." *Corel*, 2013 WL 12091649, at *4. This factor strongly favors transfer.

**3. The Final Public Factors Are Neutral.**

Both this Court and NDCA are familiar with patent law, and there are no concerns regarding conflict of laws or foreign laws here. Thus, the remaining public factors are neutral.

## V. CONCLUSION

As venue is clearly more convenient in NDCA, Meta respectfully requests the Court transfer this action to NDCA, pursuant to 28 U.S.C. § 1404(a).

Dated: April 13, 2023

*/s/ Heidi L. Keefe*
Heidi L. Keefe (CA Bar 178960)
Elizabeth L. Stameshkin (CA Bar 260865)
(Admitted *pro hac vice*)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Email:
hkeefe@cooley.com
dchen@cooley.com
lstameshkin@cooley.com

Phillip E. Morton (VA 71299) (Admitted *pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

*Attorneys for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF CONFERENCE**

In accordance with Local Rule CV-7(i), counsel for the parties conferred on April 12, 2023. MDT informed Meta that it opposes Meta's motion to transfer this action to the Northern District of California.

Dated: April 13, 2023

*/s/ Phillip E. Morton*
Phillip E. Morton

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on April 13, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Heidi L. Keefe*
Heidi L. Keefe