IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| MOBILE DATA TECHNOLOGIES LLC, | § § | |
| Plaintiff, | § § | Civil Action No. 7:22-cv-00244-DC |
| v. | § § | [redacted] |
| META PLATFORMS, INC., | § § | PUBLIC VERSION |
| Defendants. | § § § § | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

Page

A. Mr. Robinson's Attorney Declaration Should Be Disregarded. ............................ 1

B. [redacted] Has No Bearing On The Overwhelming Facts Supporting Transfer. ........................................................... 3

C. The Private Factors Weigh Heavily in Favor of Transfer to NDCA. .................... 5

1. The Costs for Willing Meta Witnesses Would be Lower in NDCA.......... 5

2. MDT's NY Inventors Would Have Substantial Travel Regardless........... 6

3. Every Witness Would Incur Expenses with a Midland-Odessa Trial. ........................................................................................... 6

4. MDT Relies on Irrelevant Third Parties Based in EDTX......................... 6

5. The Sources of Proof Weigh in Favor of Transfer to NDCA. .................. 7

6. MDT Claims That Former Employees Are Critical, When Most of Them Have No Unique or Relevant Knowledge. ..................................... 8

7. Prior Art Witnesses in NDCA Weigh in Favor of Transfer....................... 9

D. The Public Factors Favor Transfer or Are Neutral. ............................................ 10

1. NDCA Has a Strong Local Interest in this Matter, Favoring Transfer. ......................................................................................... 10

2. To the Extent Accorded Weight, Court Congestion Favors Transfer. ......................................................................................... 10

Conclusion ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ....................7

*In re Apple*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022),
*cert. denied*, 143 S. Ct. 206 (2022) ....................3

*In re Apple*,
No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022) ....................7

*Corel v. Dell*,
No. 13-CV-040, 2013 WL 12091649 (W.D. Tex. July 25, 2013) ....................10

*Gentex v. Meta Platforms*,
No. 6:21-CV-755-ADA, 2022 WL 2654986 (W.D. Tex. July 8, 2022) ....................3

*In re Google*,
58 F.4th 1379 (Fed. Cir. 2023) ....................4, 10

*In re Google*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ....................3, 5, 6

*In re Google*,
No. 2022-140, 2022 WL 1613192 (Fed. Cir. May 23, 2022) ....................7

*In re Hoffmann-La Roche*,
587 F.3d 1333 (Fed. Cir. 2009) ....................8

*In re Microsoft*,
No. 2023-128, 2023 WL 3861078 (Fed. Cir. June 7, 2023) ....................5

*In re Netflix*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ....................5

*VoIP-Pal.com v. Meta Platforms*,
No. 6:20-CV-267-ADA, 2022 WL 3021522 (W.D. Tex. July 28, 2022) ....................3

**Other Authorities**

Rule 30(b)(6) ....................4, 6, 8

NDCA—not Midland-Odessa in WDTX—is clearly the more convenient venue here. MDT chose to file this action in *Midland-Odessa*, not Austin, so Austin has no relevance, despite Plaintiff Mobile Data Technologies ("MDT") seeming to now wish that it had filed there. Neither Plaintiff MDT nor Defendant Meta Platforms ("Meta") has offices or relevant employees in the Midland-Odessa Division. In contrast, *hundreds* of relevant Meta employees have been identified in California or Washington state. This case should be transferred to NDCA.

**A. Mr. Robinson's Attorney Declaration Should Be Disregarded.**

To circumvent the page limits, "lead counsel" Erick Robinson submitted an error-laden, speculative 38-page declaration about witnesses he "will" or "may" call at trial. Attorney Robinson's declaration[1] makes up job responsibilities and imputes knowledge to Meta personnel that are wrong, as shown in the declarations of Meta personnel identified by Mr. Robinson:

| Exemplary Statements in Attorney Robinson's Declaration | Meta Personnel Declarations |
|---|---|
| [redacted] | [redacted] |

Meta attaches 18 declarations from Meta personnel refuting Attorney Robinson's speculation and hearsay about MDT's attorney-driven "will call" and "may call" lists. (*E.g.*, [redacted]

[1] Meta reserves the right to assert that Mr. Robinson's declaration is a waiver of work product protection for MDT's trial strategy.

[redacted]; [redacted]; Roenigk Decl., ¶ 2 [redacted] Vishnampet Decl., ¶ 2 [redacted]); Crepps Decl., ¶ 2 [redacted]); [redacted].)

Beyond fabricating "unique knowledge" of Meta personnel, Attorney Robinson's declaration is rife with errors, including attaching a LinkedIn page for the wrong person,[2] attributing work at a former non-Meta job to Meta,[3] and speculating about the alleged "unique position" of numerous individuals MDT was aware of, but never asked about, in venue discovery.

---

[2] [redacted]

[3] *E.g.*, [redacted]

Attorney Robinson's unreliable declaration, which is an obvious attempt to circumvent page limits, should be disregarded. *Cf. In re Apple*, No. 2022-128, 2022 WL 1196768, at *2 (Fed. Cir. Apr. 22, 2022), *cert. denied*, 143 S. Ct. 206 (2022) (error to rely on plaintiff's claim that it "may" call certain witnesses, when it was "far from clear that either of those employees ha[d] relevant or material information"); *In re Google*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021) (pointing to LinkedIn profiles, where plaintiff is "not at all specific about what testimony it expected to elicit" makes it "highly speculative" that such person would provide relevant info).

### B. [redacted] Has No Bearing On The Overwhelming Facts Supporting Transfer.

Deemed "credible and convincing" by this Court in the past, Meta employee Mr. Wong here "carefully investigated the underlying facts" and "avoided making uninformed statements" in his declaration in this case. *VoIP-Pal.com v. Meta Platforms*, No. 6:20-CV-267-ADA, 2022 WL 3021522, at *3 (W.D. Tex. July 28, 2022); *Gentex v. Meta Platforms*, No. 6:21-CV-755-ADA, 2022 WL 2654986, at *3, *6 (W.D. Tex. July 8, 2022) (crediting Mr. Wong's analysis, including identifying "at least 96 relevant employees" in NDCA). In this case, both Mr. Wong and [redacted], spoke with numerous individuals who confirmed they are the knowledgeable persons for the functionality accused in the infringement contentions[4]:

| Relevant NDCA Meta Witnesses | Relevant Washington Meta Witnesses |
|---|---|
| • [redacted] (sharing of content, privacy controls) | • [redacted] (rendering and interacting with News Feed content) |
| • [redacted] (News Feed delivery) | • [redacted] (storage) |
| • [redacted] (Shops) | • [redacted] (friending) |
| • [redacted] (Location information) | **Relevant Other Meta Witnesses** |
| • [redacted] (Location information) | • [redacted] (Live video): Los Angeles |
| • [redacted] (finance) | • [redacted] (ads): London |
| • [redacted] (marketing) | |

[4] That Mr. Wong relied upon counsel to identify the accused functionality only bolsters his credibility, as he was not attempting to make factual assertions about technical matters outside the scope of his knowledge.

(Jao Decl., ¶¶ 8-18; ECF No. 19 ("Wong Decl."), ¶¶ 7-17.) As the records attached as Exhibits A-K to Mr. Wong's declaration further confirm, for the relevant teams working on the accused functionality, ***over*** [redacted] ***Meta employees*** are located in CA state (with [redacted] in NDCA) or WA state, whereas only [redacted] are in TX. (Stameshkin Decl., ¶ 68; Wong Exs. A-K.) No witnesses live in the Midland-Odessa Division. (Wong Decl., ¶¶ 7-9, 11, 12, 16.) NDCA is the more convenient venue.

Unable to dispute the facts, MDT resorts to [redacted] (Opp., 3.) [redacted] (Robinson Ex. 1, Wong Depo. 39:19-21 [redacted]).) To be clear, [redacted] *Cf. In re Google*, 58 F.4th 1379, 1384 (Fed. Cir. 2023) (court erred in analysis after finding a witness' declaration was allegedly unreliable, since at least 11 Google employees were in NDCA).

Importantly, MDT does not dispute the veracity of a single fact about the witnesses identified in Mr. Wong's declaration. Indeed, MDT's testifying attorney, Mr. Robinson, extensively relies upon Mr. Wong's investigation (including witnesses specifically identified by Mr. Wong) to support his own declaration. (Robinson Decl., ¶¶ 23, 26, 29, 32, 35, 40, 43, 46, 49, 52, 55, 58, 61, 64, 67, 70, 73, 76, 79, 82, 85.) Moreover, Meta's second Rule 30(b)(6) witness, [redacted], independently confirmed Mr. Wong's investigation and testified to speaking with numerous individuals to confirm their work and teams, including [redacted]. (Robinson Ex. 2,

[redacted]. 26:11-27:4, 27:13-23, 28:6-13, 28:16-31:5, 31:15-23, 33:2-34:4; [redacted], ¶¶ 8-18.)

### C. The Private Factors Weigh Heavily in Favor of Transfer to NDCA.

#### 1. The Costs for Willing Meta Witnesses Would be Lower in NDCA.

MDT casually discounts the hundreds of West Coast-based Meta employees[5] identified in Meta's motion in favor of a handful of "Texas-based" witnesses speculated on by MDT Attorney Robinson. (*Compare* Opp., 6-9); *In re Netflix*, No. 2022-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) ("categorical rejection of the significance of identified witnesses, untethered to the facts of the particular case, was an abuse of discretion"). As discussed above in Section A, Attorney Robinson misunderstands the roles of the Meta personnel he selected. *Cf. In re Microsoft*, No. 2023-128, 2023 WL 3861078, at *2 (Fed. Cir. June 7, 2023) (substantial imbalance in witness convenience could not be negated based on some "potential witnesses" where there was "no case-specific findings to support such a conclusion"); *In re Google*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021) (reliance on LinkedIn without specific testimony was "highly speculative"). Moreover, MDT and Attorney Robinson never contest the relevance of the witnesses identified by Meta and the likelihood they would testify at trial.

Even all of the alleged potential Texas witnesses identified by MDT would have a harder time getting to Midland-Odessa than the Northern District of California. For example, for Austin-based witnesses there is one direct flight each day from Austin to Midland-Odessa that leaves in the evening, and the sole returning flight leaves in the morning. (Ex. 86.) These witnesses would either need to take a non-direct flight, drive more than five hours each way, or stay in Midland-Odessa at least two nights in order to testify. As such, traveling to Midland-Odessa would be less convenient than to the Bay Area. In fact, several of Mr. Robinson's named witnesses regularly

[5] *See also* [redacted] ([redacted] Decl., ¶¶ 8-18; [redacted] Decl., ¶¶ 7-17.)

travel to the Bay Area for work, and would likely find such a trip more convenient due to the ability to meet with colleagues at Meta's headquarters – something they could not do in Midland-Odessa. (Stameshkin Ex. 87, 19:1-14, 33:9-25; *id.*, Exs. 88, 68-69.)

**2. MDT's NY Inventors Would Have Substantial Travel Regardless.**

MDT has identified no MDT employees and no MDT office in Midland-Odessa because there are none. Instead, MDT argues that its two living inventors – who both live in New York – would need to fly to NDCA. (Opp., 9-10.) But they would need to travel a significant distance regardless of whether this case is in NDCA or WDTX. Notably, named inventor and MDT's Rule 30(b)(6) witness on venue topics, David Harper testified that he has <u>never</u> been to Midland-Odessa, but has traveled to the Bay Area of California. (Robinson Ex. 7, Harper Depo. 13:12-14:11.) NDCA would likely be *more* convenient for the New York witnesses, due to the Bay Area's three airports and access to direct flights, as compared with Midland-Odessa's lack of direct flights and 5-hour long drive from any major airport. (*E.g.*, Stameshkin Exs. 44-46; *In re Google*, 2021 WL 4427899, at *4 (availability of direct flights and major airports relevant).) With respect to alleged "safety" concerns, MDT identifies no case law suggesting that idiosyncratic witness opinions have any relevance to the venue transfer analysis.

**3. Every Witness Would Incur Expenses with a Midland-Odessa Trial.**

A Midland-Odessa trial would require every single witness to travel a substantial distance, waste time, or both. If the case is transferred to NDCA, far fewer individuals would need to incur travel, lodging, and other costs.

**4. MDT Relies on Irrelevant Third Parties Based in EDTX.**

MDT claims a prior owner of *related and unasserted* patents "had offices in Texas" and that entity's attorney was in Texas. (Opp., 10-11.) Failing to submit any declarations from them, MDT also fails to explain how this prior owner and attorney will have relevant knowledge.

### 5. The Sources of Proof Weigh in Favor of Transfer to NDCA.

"The documentation and information covering the design, development, operation of the Accused Instrumentalities, as well as financial information and marketing materials relating to the Accused Instrumentalities, would be created and maintained by employees primarily based in Northern California and Washington." (Wong Decl., ¶ 20); *In re Apple*, No. 2022-137, 2022 WL 1676400, at *1 (Fed. Cir. May 26, 2022) ("documents relating to the research, design, development and operation of the accused products" being "generated in Northern California" weighs toward transfer). Also, there are no [redacted] based in Texas. (Wong Decl., ¶ 23.) Thus, [redacted] from Texas. [redacted] ([redacted] Decl., ¶ 19.) The [redacted][6] (Wong Decl., ¶ 23; [redacted] Decl., ¶ 19; *In re Apple*, 2022 WL 1676400, at *1 ("source code" that "was developed, and is accessible for inspection, from Northern California and controlled on a need-to-know basis" favored transfer).) The Federal Circuit has stated that "while electronic storage of documents makes them more widely accessible than was true in the past, [this] does not make the sources-of-proof factor irrelevant." *In re Google*, No. 2022-140, 2022 WL 1613192, at *3 (Fed. Cir. May 23, 2022) (citation omitted); *In re Apple*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021) ("The district court should have compared the ease of access in the Western District of Texas relative to the ease of access in the Northern District of California.").

Meanwhile, MDT points to its Texas-based counsel as having alleged printed copies of

[6] MDT's speculation that a large company [redacted], is contrary to the actual evidence.

electronic documents – an irrelevant fact to the venue analysis – and speculates that documents may exist in its Round Rock "office"[7] – a fact directly contradicted by the manager of MDT. (Opp., 14; Stameshkin Ex. 89, Pitcock Depo. 39:14-21); *In re Hoffmann-La Roche*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (transfer of documents to counsel's offices for litigation).

Because NDCA is clearly more convenient for access, collection, and production of relevant sources of proof, this factor weighs in favor of transfer.

### 6. MDT Claims That Former Employees Are Critical, When Most of Them Have No Unique or Relevant Knowledge.

MDT claims that former Meta employees are "critical witnesses." (Opp., 14.)[8] But these individuals would not be Rule 30(b)(6) witnesses, would have knowledge limited to the time period during which they worked at Meta, could not speak about the current design or development of the Accused Functionalities, and would not independently have access to internal confidential Meta information to prepare for any deposition or trial.

Again, MDT and Attorney Robinson wildly speculate about what these former employees could testify about. For Alyshia Ledlie and James Wright, the record is devoid of evidence that either of them have unique knowledge relevant to this case. The LinkedIn page Attorney Robinson attaches for Ms. Ledlie says nothing about privacy settings (Robinson Ex. 46), and the LinkedIn page for Mr. Wright does not support speculation that he alone is in a "unique" position to testify about ads on the Facebook feed and Live video on the Facebook mobile app (Robinson Ex. 25). Rather, [redacted] for the team primarily responsible for the creation side of the Live video product, and [redacted]

---

[7] MDT's manager testified that no one from MDT has ever been to this office. (Stameshkin Ex. 89, Pitcock Depo. 40:5-8.)

[8] A basic LinkedIn search shows that the vast number of former Meta employees based in the Bay Area, wildly outnumber any former employees in Texas. (Stameshkin Ex. 55 (7,000+ results for search of individuals listing Meta as former employer and location of "San Francisco Bay Area").)

on the team responsible for Ads Targeting. (Wong Decl., ¶¶ 8, 13.) There are also numerous other *current* employees on these teams that would have more current knowledge than this former employee. (*E.g.*, Wong Ex. B, Ex. G, Ex. H.) And, for the other former Meta employees identified by Attorney Robinson, Mr. Wong already spoke to them to confirm what they worked on. (*E.g.*, Wong Decl., ¶ 34 (Gigi Melrose); *id.*, ¶ 40 (Suba Vasudevan); *id.*, ¶ 36 ([redacted]); *id.*, ¶ 39 (Usman Tanveer).) None work on the relevant Accused Functionality.[9] There is no reason to believe these former employees, some of whom had limited tenures at Meta, have any unique knowledge that no Meta employee in NDCA or the West Coast could cover.

**7. Prior Art Witnesses in NDCA Weigh in Favor of Transfer.**

Printed publications describing certain Yahoo! features have already been used to *invalidate* a related patent to the patents-in-suit, and Meta has charted the Yahoo! system as part of its invalidity contentions. Meta also charted the Event411.com prior art system and a patent naming Mr. Daniel Jameson as an inventor. Meta thus identified two relevant Yahoo! prior artists and one Event411.com prior artist in the subpoena power of NDCA:

| Relevant NDCA Prior Art Witness | Relevant Southern CA Prior Art Witness |
|---|---|
| • **Adam Rosen** (Yahoo! Clubs)<br>• **Lalgudi Kannan** (several Yahoo! systems) | • **Daniel Jameson** (Event411.com) |

(Stameshkin Exs. 31-38.) Although MDT asserts the contentions being "preliminary," suggests that *uncharted* art produced by Meta is cumulative of these references and could be used in place of them with non-California based inventors, and speculates about who might or might not be called, nothing undermines Meta's identification of these 3 relevant prior artists in California.

[9] Attorney Robinson's declaration also refers to two other [redacted] employees as "will call" – Harshit Saxena and [redacted]. But Mr. Saxena did not work on [redacted] ([redacted] Decl. ¶ 6.) And Mr. [redacted] knowledge would be similar to that of his currently employed team member [redacted], who also does not have unique knowledge relevant to this case. (*See* generally [redacted] Decl.)

### D. The Public Factors Favor Transfer or Are Neutral.

#### 1. NDCA Has a Strong Local Interest in this Matter, Favoring Transfer.

MDT ignores that Meta's headquarters and principal place of business are in NDCA, along with [redacted] of its U.S.-based workforce. (Wong Decl., ¶¶ 2, 3.) As of August 24, 2023, more than [redacted] full-time employees were in the California Bay Area, whereas less than [redacted] full-time employees were in Texas. (Jao Decl., ¶ 7; Stameshkin Ex. 90 (Jao Depo. Ex. 2).) NDCA unquestionably has a strong interest here.

Because MDT has no presence in the Midland-Odessa Division, MDT resorts to arguments about Meta's "involvement in elections, and advertising in general[,]" its "facilities in this District and Texas, in general[,]" and allegedly relevant witnesses in "Texas, in general." (Opp., 17-18.) MDT's fundamental problem is that Meta has ***no relevant presence in the Midland-Odessa Division***. *Cf. Corel v. Dell*, No. 13-CV-040, 2013 WL 12091649, at *4 (W.D. Tex. July 25, 2013) ("it would be an undue burden on the people of the <u>***Midland-Odessa Division***</u> to assign them jury duty when they have no interest in this case being resolved; whereas the [transferee forum] clearly has a particular interest in this case's resolution") (emphasis added). MDT's generic arguments, even if credited, support transfer, given Meta's much stronger, deeper, and longstanding presence in the Northern District of California. (Wong Decl., ¶¶ 2, 3.)

#### 2. To the Extent Accorded Weight, Court Congestion Favors Transfer.

The higher per-judge case burden in WDTX and the slight difference in time to trial demonstrates that this factor, if considered, is either neutral or weighs in favor of transfer. (Mot. at 14; Pitcock Depo. at 25:17-22 (MDT's sole business is licensing and enforcing the patents-in-suit); *In re Google*, 58 F.4th at 1383 (abuse of discretion to weight this factor where there is no urgency).)

## CONCLUSION

Meta thus respectfully requests the Court transfer this action to NDCA.

Dated: October 12, 2023

*/s/ Heidi L. Keefe*
Heidi L. Keefe (CA Bar 178960)
Elizabeth L. Stameshkin (CA Bar 260865)
(Admitted *pro hac vice*)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Email:
hkeefe@cooley.com
dchen@cooley.com
lstameshkin@cooley.com

Phillip E. Morton (VA 71299)
(Admitted *pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

*Attorneys for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on October 12, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via electronic mail.

*/s/ Heidi L. Keefe*
Heidi L. Keefe